**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC., | No.23-15108 |
| | D.C. No. |
| *Plaintiff-Appellant*, | 1:22-cv-00386- |
| v. | DKW-KJM |
| RODNEY A. MAILE, in an Official Capacity as Administrative Director of the Courts; ELIZABETH M. ZACK, in an Official Capacity as Chief Clerk of the Hawai`i Supreme Court; LORI ANN OKITA, in an Official Capacity as Chief Court Administrator of the First Circuit; SANDY S. KOZAKI, in an Official Capacity as Chief Court Administrator of the Second Circuit; DAVID M. LAM, in an Official Capacity as Chief Court Administrator of the Fifth Circuit; DAWN WEST, in an Official Capacity as Chief Court Administrator of the Third Circuit, | ORDER AND AMENDED OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Hawai'i
Derrick Kahala Watson, Chief District Judge, Presiding

Argued and Submitted February 15, 2024
Honolulu, Hawai'i

Filed September 26, 2024

Before:  Richard A. Paez, Milan D. Smith, Jr., and Lucy H.
Koh, Circuit Judges.

Order;
Opinion by Judge Paez

## SUMMARY[*]

### First Amendment / Access to Court Records

Reversing the district court's judgment for the Chief Court Administrators of the Hawai'i state courts and remanding, the panel held that Hawai'i Court Records Rules requiring that all medical and health records filed in any court proceeding be filed under seal without further order of a judge are unconstitutionally overbroad.

The panel held that a state may not mandate the categorical sealing of all medical and health records filed in any state court proceeding in order to protect the individual privacy rights of the subjects of those records, without any case-by-case consideration of the privacy interest implicated

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

by the records or whether less restrictive alternatives exist to sufficiently protect that interest.

The panel concluded that the First Amendment grants the public a presumptive right to access a substantial portion of the records sealed under Hawaiʻi's challenged sealing provision, and defendants have not articulated a compelling governmental interest sufficient to rebut the presumption of openness as to those records. The panel was not persuaded that the mandatory, categorical sealing of all medical and health records was the least restrictive means of protecting Hawaiians' privacy rights. Permitting Hawaiʻi courts to consider motions to seal medical and health records on a case-by-case basis would ensure that closure serves an asserted privacy interest and was the least restrictive means of protecting that interest. Because a substantial proportion of the challenged provision's applications encroach on the public's right of access, the provision was unconstitutionally overbroad.

## COUNSEL

Robert B. Black (argued), Civil Beat Law Center for the Public Interest Inc., Honolulu, Hawaii, for Plaintiff-Appellant.

Lauren K. Chun (argued), Deputy Solicitor General, State of Hawaiʻi; Kalikoʻonālani D. Fernandez, Solicitor General; Robyn B. Chun, Deputy Assistant Attorney General; Anne E. Lopez, Hawaii Attorney General; Office of the Hawaii Attorney General, Honolulu, Hawaii; for Defendants-Appellees.

**ORDER**

The mandate issued by the court on September 19, 2024 is recalled.

The slip opinion filed on August 28, 2024, and published at 2024 WL 3958954 is amended as follows:

1. Page 13: After the parenthetical ending " . . . investigatory process," add the following footnote:

   < [3] We have also recognized that other court records, like presentence investigation reports, are presumptively confidential. *See United States v. Schlette*, 842 F.2d 1574, 1583 (9th Cir. 1988) (explaining, under the common-law right to inspect judicial records, that "presentence reports are confidential documents" that need only be disclosed "when a sufficient showing supporting disclosure has been made").>

2. Page 19: Change <Hawaiians'> to <Hawai'i residents'>

An amended opinion is filed concurrently with this order.

No petitions for rehearing may be filed in response to the Amended Opinion.

The mandate shall issue forthwith.

**OPINION**

PAEZ, Circuit Judge:

Under the First Amendment, "the press and the public have a presumed right of access to court proceedings and documents." *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990). "By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982). This right of access does not attach to every judicial proceeding or court record. *Forbes Media LLC v. United States*, 61 F.4th 1072, 1077 (9th Cir. 2023). But where the First Amendment right of access attaches, and "the State attempts to deny [that] right of access," "it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper*, 457 U.S. at 606–07.

The Hawaiʻi Court Records Rules, which apply to all criminal and civil proceedings in Hawaiʻi state courts, require that all "medical and health records" be filed under seal without further order of a judge. Haw. Ct. Recs. Rules ("Rules") 2.19; 9.1(a). We are asked to determine whether a state may mandate the categorical sealing of all "medical and health records" filed in any state court proceeding in order to protect the individual privacy rights of the subjects of those records, without any case-by-case consideration of the privacy interest implicated by the records or whether less restrictive alternatives exist to sufficiently protect that interest. We conclude that it may not.

# I.

## A.

The Rules provide that "a party shall not include personal information in *any* accessible document filed in any state court," Rule 9.1(a) (emphasis added), and define "personal information" to include "medical and health records," Rule 2.19. Such personal information, including all medical or health records, must be filed "by means of a Confidential Information Form" which is "designated confidential, protected, restricted, sealed, or not accessible." Rule 9.1(a). The confidential information form must be accompanied by a fly sheet, a form listing limited information including the case name, case number, a brief description of the information submitted, and a reference to Rule 9. Rule 9.3. Parties and attorneys who do not comply with the mandatory sealing requirements may be subject to sanctions. Rule 9.5.

Put simply, anyone filing any document that might qualify as a medical or health record in any state court proceeding in Hawaiʻi must file that document under seal, on penalty of sanctions. This mandatory, categorical sealing requirement applies regardless of whether a party is filing their own medical or health record, whether that record has already been made public, and whether the subject of the record believes sealing is necessary to protect any private information contained therein. Under the Rules, every medical or health record must be automatically sealed from public view. The Rules do not provide for judicial review of whether the sealed records constitute medical or health records, whether the records contain any private information, or whether alternatives to sealing might adequately protect the privacy interest. And anyone seeking

to access these records must litigate motions to unseal on a case-by-case basis.

**B.**

In 2020, Plaintiff Civil Beat moved to unseal the court-ordered competency evaluations of Ramoncito Abion. Abion was charged with assault after hitting a gas station employee with a hammer, then telling the arresting officer he heard voices and saw visions. *State v. Abion*, 478 P.3d 270, 272 (Haw. 2020). A panel of three court-appointed examiners deemed Abion mentally fit for trial, although one suggested that, at the time of the offense, Abion was experiencing psychosis triggered by long-term methamphetamine use. *Id.* at 273–74. When Abion sought to introduce that examiner's testimony in support of an insanity defense, the trial court held that drug-induced mental illness was not a defense under state law, excluded the examiner's testimony as irrelevant, and barred Abion from calling the examiner as a witness. *Id.* at 275–76. The jury convicted Abion of assault. *Id.* at 277.

Civil Beat filed a motion to unseal the competency evaluations in the Hawaiʻi Supreme Court while Abion's criminal appeal was pending in that court. Abion objected, arguing that the competency evaluations should remain sealed to protect his privacy. The Hawaiʻi Supreme Court declined to "unseal medical reports determining that [Abion] was fit to stand trial," construing the "medical and health records" that must be sealed under the Rules to include criminal responsibility and competency evaluations. *State of Hawaiʻi v. Abion*, No. SCWC-18-0000600 (Haw. Oct. 6, 2020). The court did not explain its reasons for denying the motion to unseal; it offered no analysis beyond a citation to Rules 2.19 and 9.1. *Id.*

The Hawaiʻi Supreme Court vacated Abion's conviction in a subsequent ruling, concluding that the trial court's exclusion of the examiner's testimony regarding methamphetamine-induced psychosis precluded Abion from presenting a complete defense. *Abion*, 478 P.3d at 280–84.

## C.

In August 2022, Civil Beat initiated this suit against the Chief Court Administrators of the Hawaiʻi state courts, who are tasked with enforcing the Rules. Civil Beat challenged the mandatory sealing provision for "medical and health records" as facially overbroad in violation of the First Amendment and unconstitutional as applied to competency evaluations.

The district court granted summary judgment to Defendants, holding that (1) the public has no presumptive First Amendment right to access "medical and health records" filed in any court proceeding, so the sealing provision is not facially unconstitutional; and (2) although the public has a presumptive right to access competency evaluations, requiring the public to litigate case-by-case access to such records after they are sealed does not violate the First Amendment. *Civil Beat Law Ctr. for the Public Interest, Inc. v. Maile*, No. 22-cv-00386-DKW-KJM, 2022 WL 17960922, at *2–4 (D. Haw. Dec. 27, 2022).

This appeal followed.

## D.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment and, in First Amendment cases, independently review any factual findings. *Courthouse News Serv. v.*

*Planet* (*Planet II*), 947 F.3d 581, 589 (9th Cir. 2020) (citing *Kaahumanu v. Hawaiʻi*, 682 F.3d 789, 796 (9th Cir. 2012)).

## II.

Civil Beat argues that the mandatory sealing provision for medical and health records[1] unlawfully infringes on the public's presumptive First Amendment right to access court records, which attaches to most of the records sealed under the challenged provision.

Under the First Amendment overbreadth doctrine, a statute or rule is facially invalid if "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. Netchoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). Evaluating a First Amendment overbreadth challenge is a two-step inquiry. "The first step in the proper facial analysis is to assess the state laws' scope." *Id.* at 2398. "The next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.*

The scope of the challenged provision is undisputed; it requires that all "medical and health records" filed in any state court proceeding in Hawaiʻi be filed under seal. We therefore proceed to determining whether a substantial number of its applications are unconstitutional.

---

[1] Specifically, Civil Beat objects to the inclusion of "medical and health records" in the definition of "personal information" provided by Rule 2.19. (Rule 9.1, in turn, requires that all such "personal information" be filed under seal.) We refer to the inclusion of "medical and health records" in Rule 2.19 as the challenged provision.

**A.**

"We have long presumed a First Amendment 'right of access to court proceedings and documents.'" *Planet II*, 947 F.3d at 589 (quoting *Oregonian Publ'g*, 920 F.2d at 1465); *see also Press-Enterprise Co. v. Superior Ct.* (*Press-Enterprise I*), 464 U.S. 501, 509 (1984) ("Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness."). This presumption of "[o]penness in judicial proceedings 'enhances both the basic fairness of the [proceeding] and the appearance of fairness so essential to public confidence in the system,' and forms 'an indispensable predicate to free expression about the workings of government.'" *Planet II*, 947 F.3d at 589 (internal citations omitted) (first quoting *Press-Enterprise I*, 464 U.S. at 508, then quoting *Courthouse News Serv. v. Planet* (*Planet I*), 750 F.3d 776, 785 (9th Cir. 2014)). And, "[a]bsent a showing that there is a substantial interest in retaining the private nature of a judicial record, once documents have been filed in judicial proceedings, a presumption arises that the public has the right to know the information they contain." *Id.* at 592.

We have recognized, however, that while "[e]very judicial proceeding . . . arguably benefits from public scrutiny to some degree, in that openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government," "complete openness would undermine important values that are served by keeping some proceedings closed to the public." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989). "Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government

operations that would be totally frustrated if conducted openly." *Press-Enterprise v. Superior Ct.* (*Press-Enterprise II*), 478 U.S. 1, 8–9 (1986).

"The competing interests at stake in this area led the Supreme Court to adopt what has become known as the 'experience and logic' test." *Forbes*, 61 F.4th at 1077. To determine whether the First Amendment grants the public a presumptive right of access to a judicial proceeding or record, "we consider (1) whether that proceeding or record 'ha[s] historically been open to the press and general public' and (2) 'whether public access plays a significant positive role in the functioning of the particular [governmental] process in question.'" *Planet II*, 947 F.3d at 590 (alterations in original) (quoting *Press-Enterprise II*, 478 U.S. at 8).**2** And, even where a presumptive First Amendment right of public access attaches to a proceeding or record, this "establishes only a strong presumption of openness, and 'the public still can be denied access if closure is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Times Mirror*, 873 F.2d at 1211 n.1).

---

[2] Our precedent conflicts as to whether *both* experience and logic must support public access for the right to attach. *Compare Planet II*, 947 F.3d at 590 ("A presumptive First Amendment right of access arises if a proceeding or record satisfies both requirements of the two-part test."), *with Forbes*, 61 F.4th at 1079 ("The absence of experience, however, does not necessarily foreclose a qualified right of public access under the First Amendment. We have held that 'logic alone, even without experience, may be enough to establish the right.'" (quoting *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008))). We need not resolve this discrepancy, which would not alter the outcome of this appeal.

In the decades since the Supreme Court first articulated the experience and logic test, we have concluded that the presumptive First Amendment right of public access attaches broadly to criminal and civil proceedings. As both we and the Supreme Court have recognized, the First Amendment grants the public a presumptive right to access nearly every stage of post-indictment criminal proceedings, including pretrial proceedings, preliminary hearings, voir dire, trials, and post-conviction proceedings, as well as records filed in those criminal proceedings. *See Globe Newspaper*, 457 U.S. at 603–04 (criminal trials) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579–80 (1980) (plurality opinion)); *Press-Enterprise I*, 464 U.S. at 505–510 (1984) (voir dire); *Press-Enterprise II*, 478 U.S. at 13 (preliminary hearings); *Oregonian Publ'g*, 920 F.2d at 1465–66 (plea agreements); *United States v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982) (pretrial proceedings, including suppression hearings); *Seattle Times Co. v. U.S. Dist. Ct.*, 845 F.2d 1513, 1517 (9th Cir. 1988) (pretrial release proceedings and documents filed therein); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) (pretrial documents in general); *Copley*, 518 F.3d at 1026–28 (plea colloquy transcripts); *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985) (post-conviction proceedings and records). We have also joined the "nationwide consensus" of our sister circuits in concluding that the First Amendment right of access "reaches civil judicial proceedings and records." *Planet II*, 947 F.3d at 590; *see id.* at 591 (holding right attaches to newly filed civil complaints); *id.* at 590 n.3 (collecting out-of-circuit cases); *see also Richmond Newspapers*, 448 U.S. at 580 n.17 ("Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that

historically both civil and criminal trials have been presumptively open."). "These rights of access are categorical and do not depend on the circumstances of any particular case." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1085 (9th Cir. 2014).

On the other hand, the public has no presumptive right to access certain types of proceedings and records, where there is no tradition of access and/or where public access would "frustrate[] . . . the particular process in question." *Press-Enterprise II*, 478 U.S. at 8–9. "A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Id.* at 9 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)). Thus, the presumptive First Amendment right of access does not attach to grand jury proceedings or related records. *Index Newspapers*, 766 F.3d at 1084–85 (concluding that the right attached to contempt order and transcripts concerning contemnor's ongoing confinement, but not to transcripts or filings concerning underlying grand jury subpoena). We have similarly concluded that the First Amendment right does not attach to certain proceedings and records related to ongoing criminal investigations or discovery. *See Forbes*, 61 F.4th at 1081 (no right attaches to All Writs Act technical assistance proceedings or records, where proceedings have traditionally occurred *ex parte* and under seal to avoid impeding ongoing criminal investigations); *United States v. Sleugh*, 896 F.3d 1007, 1013–14 (9th Cir. 2018) (no right attaches to Federal Rule of Criminal Procedure 17(c) subpoenas because "there is no tradition of access to criminal discovery" and logic does not support such a right); *Times Mirror*, 873 F.2d at 1217–18 (no right attaches to pre-indictment warrant records where

experience supports closure during ongoing investigation and access would harm investigatory process).[3]

We have therefore explained that, although "there is no right of access which attaches to all judicial proceedings," *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 946 (9th Cir. 1998), "[t]he public generally has presumptive access to judicial opinions, hearings, and court filings," *Forbes*, 61 F.4th at 1077. And, "[w]here . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspapers*, 457 U.S. at 606–07.

## B.

First, we must consider whether the First Amendment grants the public a presumptive right to access the medical and health records categorically sealed under the challenged provision. We conclude that the presumptive right of access attaches to a substantial subset of such records.

The district court concluded that no First Amendment right attached to medical or health records, finding that Civil Beat failed to show that experience and logic supported a right of access to this category of court records. *Civil Beat Law Ctr.*, 2022 WL 17960922, at *2–3. The court explained that Civil Beat cited no historical examples "of an individual's medical records, such as a doctor's treating

---

[3] We have also recognized that other court records, like presentence investigation reports, are presumptively confidential. *See United States v. Schlette*, 842 F.2d 1574, 1583 (9th Cir. 1988) (explaining, under the common-law right to inspect judicial records, that "presentence reports are confidential documents" that need only be disclosed "when a sufficient showing supporting disclosure has been made").

notes, being open to the general public," and that public access to such records "would play little, if any, role in the functioning of Hawai'i's court system." *Id.* at \*3.

But our precedent makes clear that such a "narrow focus on categories of documents is not correct." *Forbes*, 61 F.4th at 1083. "We have never held that in making the threshold right of public access determination, courts should consider the categories of documents sought abstracted from the proceedings in which they were generated." *Id.* Instead, courts must "consider[] the nature of the proceedings themselves," and evaluate court records in the context of these proceedings. *Id.* at 1085. Thus, for example, in determining whether the right attaches to pre-indictment search warrant *materials*, we evaluated whether there was a history of public access to warrant *proceedings* and whether public access would support the functioning of those proceedings. *Id.* at 1083 (discussing *Times Mirror*, 873 F.3d at 1213–15).

Here, to determine whether the right attaches to medical or health records, we must evaluate whether there is a history of public access to the proceedings in which such records are filed and whether public access to such records supports the functioning of those proceedings. Our review of the caselaw establishes that we have already found the experience and logic test met for most criminal and civil proceedings. We have only concluded that experience and/or logic did not support openness where the proceedings or records at issue implicated pre-indictment warrants, grand jury proceedings, or criminal discovery, or would otherwise imperil ongoing criminal investigations.

In light of this precedent, we conclude that the First Amendment grants the public the presumptive right to access

a substantial number of the records protected by the challenged provision. This provision categorically mandates the sealing of any medical or health record filed at any stage of any criminal or civil proceeding in Hawaiʻi. It applies equally to records attached to newly filed civil complaints and to records attached to post-trial motions in civil and criminal cases, even if those records were submitted as evidence at trial. Given the range of criminal and civil legal proceedings and records to which the First Amendment grants the public a presumptive right of access, a substantial proportion of the challenged provision's sweep reaches records protected by that right.

## C.

Defendants argue that, even if the First Amendment grants a presumptive right of access to any "medical and health records," requiring that all such records be filed under seal is necessary to protect the individual right to privacy guaranteed by Hawaiʻi's constitution and laws, such that the challenged provision does not run afoul of the First Amendment.

We agree that protecting an individual's constitutional and statutory right to privacy is a compelling interest that may justify sealing a particular medical or health record. As we have recognized, "[t]he need to protect individual privacy rights may, in some circumstances, rise to the level of a substantial governmental interest and defeat First Amendment right of access claims." *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002). But where, as here, the individual privacy interest implicated by a particular record may vary, the State of Hawaiʻi's general interest in protecting the privacy of its citizens cannot justify the categorical, mandatory sealing of every such record.

The individual right to privacy may justify closure where such a right is asserted by the affected individual and the court makes pre-closure findings as to the significance of the interest and necessity of closure.  In *Press-Enterprise I*, the trial court ordered six weeks of voir dire in a criminal trial closed to the public to protect asserted interests including "the right to privacy of the prospective jurors, for any whose 'special experiences in sensitive areas . . . do not appear to be appropriate for public discussion.'"  464 U.S. at 510.  The Supreme Court agreed that jury selection "may, in some circumstances, give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain."  *Id.* at 511.  But a prospective juror's right to privacy could not justify the preemptive, blanket closure of voir dire.  Because "[t]he privacy interests of such a prospective juror must be balanced against the historic values" supporting public access, the Court explained that trial judges must "requir[e] the prospective juror to make an affirmative request" to discuss sensitive questions "*in camera* but with counsel present and on the record," such that "the trial judge can ensure that there is in fact a valid basis for a belief that disclosure infringes a significant interest in privacy."  *Id.* at 512.  Advance, categorical closure of the sort ordered by the trial judge in that instance—with "a failure to articulate findings with the requisite specificity" for an appellate court to determine whether any juror's privacy was implicated, and "a failure to consider alternatives to closure"—ran afoul of the First Amendment.  *Id.* at 513.

Similarly, in *Globe Newspaper*, the Supreme Court considered whether Massachusetts's asserted interest in "the protection of minor victims of sex crimes from further

trauma and embarrassment" could justify a statute mandating courtroom closure during their testimony. 457 U.S. at 607–09. The Court agreed that the asserted interest was compelling but explained that it "d[id] not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest," and the challenged statute "require[d] closure even if the victim d[id] not seek the exclusion of the press and general public, and would not suffer injury by their presence." *Id.* at 607–08 (emphasis in original). Mandatory closure "cannot be viewed as a narrowly tailored means of accommodating the State's asserted interest" where "[t]hat interest could be served just as well by requiring the trial court to determine on a case-by-case basis" whether the interest requires closure. *Id.* at 609.

The same reasoning applies here. The individual privacy interest Defendants invoke will naturally vary across people, cases, and records. Not everything that might qualify as a medical or health record necessarily contains information that is private, and not everyone may care to keep every medical or health record private. And, even assuming that every filed record implicates an identically strong privacy interest, we expect that selective redaction could sufficiently protect that interest in many instances. Because the privacy interest implicated by a particular medical or health record can be protected just as well by a case-by-case determination of whether closure is truly necessary to protect the asserted interest, mandatory sealing is not the least restrictive means to protect that interest. *See id.*

Under the Rules, as written, a litigant faces sanctions for publicly filing their own medical or health records, even if such records contain no private information, and even if the

litigant wishes to make their private information public. In such cases, closure serves to protect no interest at all.

**D.**

Defendants also urge us to uphold the mandatory sealing provision because case-by-case sealing would be more burdensome for courts, litigants, and members of the public. Defendants suggest that requiring case-by-case judicial evaluation of motions to seal would flood state courts with unnecessary litigation: because the Hawai'i constitution grants an individual right of privacy, *see* Haw. Const. art. 1, § 6, parties moving to seal medical and health records would easily establish a compelling privacy interest sufficient to override public access. And members of the public would still need to challenge individual sealing motions in court. Such a procedure, Defendants contend, is both unnecessary and inefficient.

This argument is unpersuasive. We cannot agree with Defendants' assumptions that parties will move to seal every record that might constitute a medical or health record filed in state court, that the individual privacy interest will be equally strong as to every record, or that sealing will be the least restrictive means available to protect the privacy interest in every case. We therefore disagree that state courts would be burdened with unnecessary motions to seal; those courts are in the best position to evaluate whether the records at issue must, in fact, be sealed to protect any asserted privacy interest. And, perhaps most crucially, Defendants' argument ignores the presumption of openness granted by the First Amendment.

Where the First Amendment right attaches, there exists "a strong presumption of openness," *Doe*, 870 F.3d at 997, which may be overcome only "if closure is necessitated by a

compelling governmental interest, and is narrowly tailored to serve that interest," *id.* (cleaned up) (quoting *Times Mirror*, 873 F.2d at 1211 n.1).  As this court has recognized, where the right of access attaches, the procedures of case-by-case sealing and mandatory, categorical sealing are not on equal constitutional footing.  *See Associated Press*, 705 F.2d at 1147 (explaining that "the court's orders that seal each and every document filed impermissibly reverse the 'presumption of openness' that characterizes criminal proceedings"); *Doe*, 870 F.3d at 1002 (agreeing that "a presumption of closure for all court filings [relating to defendant's cooperation] would not be consistent with our circuit's case law," although courts could permit defendants to file individual sealing motions to be adjudicated on a case-by-case basis).   The challenged provision imposes a presumption of closure on all qualifying records; as to those records entitled to a presumption of openness, the challenged provision impermissibly reverses the presumption granted by the First Amendment.

Ultimately, we are not persuaded that mandatory, categorical sealing of all medical and health records is the least restrictive means of protecting Hawai'i residents' privacy rights.  *See Globe Newspaper*, 457 U.S. at 609. Permitting Hawai'i courts to consider motions to seal medical and health records on a case-by-case basis would ensure that closure serves an asserted privacy interest and is the least restrictive means of protecting that interest.

## III.

Because the First Amendment grants the public the presumptive right to access a substantial portion of the records sealed under the challenged provision, and Defendants have not articulated a compelling governmental

interest sufficient to rebut the presumption of openness as to those records, we conclude that a substantial proportion of the challenged provision's applications encroach on the public's right to access these records, such that the provision is unconstitutionally overbroad. [4]

We are mindful of the "risks posed by remote electronic access to court filings," *Doe*, 870 F.3d at 1002, including privacy concerns. As we have explained, "nothing in our precedent prevents" courts from sealing records to which the presumptive public right of access attaches, "as long as [] courts decide motions to seal or redact on a case-by-case basis." *Id.* And, "[t]o be sure, a court has the right to temporarily seal access to court records pending a hearing" on the motion to seal. *Phoenix Newspapers*, 156 F.3d at 949. Where the presumptive First Amendment right of access attaches, such a procedure ensures the protection of the individual right to privacy without unnecessarily burdening the constitutional rights of the public.

## IV.

For the foregoing reasons, we conclude that the inclusion of "medical and health records" in Rule 2.19 renders the sealing requirement of Rule 9.1 unconstitutionally overbroad.[5] Accordingly, the judgment of the district court

---

[4] To be clear, this ruling does not affect any of the other categories of information defined as personal information in Rule 2.19, nor does it affect the sealing requirement of Rule 9.1 as applied to such information.

[5] Because we conclude that this provision is unconstitutionally overbroad, we decline to decide the merits of Civil Beat's as-applied challenge, and therefore need not address Defendants' argument that the *Rooker-Feldman* doctrine bars us from exercising subject-matter jurisdiction over the as-applied challenge.

is **REVERSED**, and the matter is remanded for further proceedings consistent with this opinion.